**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**CHRISTINA A. ROBINSON,**

Plaintiff,

**v.**                                                          **CIVIL ACTION NO.: 3:14-CV-123
(GROH)**

**TABOO GENTLEMEN'S CLUB, LLC;
CASEY McGEE; HENRY WORCESTER, IV;
and HENRY WORCESTER, III,**

Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION

This matter is before the Court for consideration of the Defendants' Motion to Compel Arbitration and to Dismiss or to Stay Proceedings, and for Attorney Fees and Costs, [ECF 3], filed on November 26, 2014. For the following reasons, the Court **GRANTS** the Defendants' motion.

## I. Background

The Plaintiff began working as an exotic dancer at Taboo Gentlemen's Club ("Taboo") in Martinsburg, West Virginia, in September of 2009. The Plaintiff alleges that each named Defendant was her employer under state and federal law. From 2009 through 2014, the Plaintiff worked several days a week as an exotic dancer. According to the Plaintiff, she was not paid any wages for her work at Taboo, but instead was required to pay the Defendants a certain amount of money out of the tips that she earned for each of the shifts she worked. These payments varied depending upon which type of dance the

Plaintiff was performing when she earned her tips.

Beginning in September of 2011, the parties entered into a series of Entertainment Licensing Agreements, which included arbitration clauses. Although she initiated the instant civil action in circuit court, the Plaintiff avers that she has attempted to engage in negotiations and to encourage arbitration with the Defendants for months, to no avail. As early as July 24, 2014, she reached out to the Defendants in an effort to reach an informal resolution of this matter. The parties then exchanged settlement offers over the following several weeks, but failed to reach an agreement. By letter dated September 4, 2014, the Plaintiff requested that the Defendants either make a new settlement offer within ten days or begin the arbitration process. After the Plaintiff again reached out to the Defendants, the Defendants replied on September 26, 2014, informing the Plaintiff that they were in the process of selecting local counsel for a potential arbitration. On October 22, 2014, the Defendants suggested an arbitrator. The Plaintiff requested that the Defendants toll the applicable statute of limitations while the parties negotiated the details of the arbitration process. When counsel for the Defendants told the Plaintiff that he lacked the authority to toll the limitations period, the Plaintiff replied that suit would be filed. After not hearing from the Defendants for two days, the Plaintiff filed suit on October 24, 2014.

The Defendants argue that they never refused to engage in good faith with the Plaintiff in selecting an arbitrator and proceeding to arbitration. According to the Defendants, they were actively engaged in the process of selecting an arbitrator when the Plaintiff filed her complaint. Furthermore, the Defendants argue that, if the Plaintiff truly believed the Defendants were intentionally delaying to frustrate the arbitration process, she could have moved to compel arbitration pursuant to the parties licensing agreement and

9 U.S.C. § 4.

As stated above, the Plaintiff's complaint was filed on October 24, 2014, in the Circuit Court for Berkeley County, West Virginia. The complaint alleges that the Defendants' treatment of the Plaintiff in her role as an exotic dancer at Taboo violated both the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, and the West Virginia Wage Payment and Collection Act ("WVWPCA"), W. Va. Code §§ 21-5-1 to -18.

On November 21, 2014, the Defendants filed their notice of removal with this Court pursuant to 28 U.S.C. § 1441(a), as the Court has federal question jurisdiction over the Plaintiff's federal claims and supplemental jurisdiction over her state law claims. Shortly thereafter, on November 26, 2014, the Defendants filed the instant motion to compel arbitration. Because no scheduling order had yet been entered, the Court vacated its First Order and Notice Regarding Discovery and Scheduling, in light of the parties' disputes concerning arbitration. The Plaintiff filed a response brief on December 15, 2014. The Defendants replied on December 22, 2014.

On December 24, 2014, the Plaintiff moved for leave to file a supplemental memorandum, arguing that the Defendants introduced new material in their reply brief, including copies of the parties' licensing agreements that the Plaintiff was not in possession of and did not recall signing. The Defendants did not respond to the Plaintiff's motion for leave to file a supplemental memorandum. The Court has relied on the arguments and exhibits provided by the Defendants in their reply brief and by the Plaintiff in her

supplemental memorandum for purposes of ruling on the instant motion.[1]

On February 25, 2015, the Plaintiff filed a "motion regarding arbitration," introducing additional facts and raising multiple arguments in the alternative. The Defendants responded to that motion on March 12, 2015. The Plaintiff replied on March 24, 2015.

## II. Applicable Law

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, applies to "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof," 9 U.S.C. § 2. The FAA reflects "a liberal federal policy favoring arbitration agreements." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). This policy is supported by Congress' view that arbitration constitutes a more efficient dispute resolution process than litigation. Hightower v. GMRI, Inc., 272 F.3d 239, 241 (4th Cir. 2001). Therefore, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." Adkins v. Labor Ready, Inc., 303 F.3d 496, 500 (4th Cir.

---

[1] A surreply is generally permitted when a party seeks to respond to new material that an opposing party has introduced for the first time in its reply brief. See Greene, ex rel. C.G. v. Nationwide Mut. Ins. Co., Civil Action No. 5:09-CV-134, 2010 WL 892211, *1 (N.D.W. Va. Mar. 10, 2010). If a court does not rely upon the new material raised in the opposing party's reply brief to reach its decision in a matter, then a surreply is irrelevant and unnecessary. See E.E.O.C. v. LA Weight Loss, 509 F. Supp. 2d 527, 540 (D. Md. 2007) (denying the parties' motions to file surreplies because the court did not rely upon the new case law and evidence in making its decision). If a Court finds that it will rely on information provided in the surreply, the filing is thus not superfluous or unnecessary. See Tube City IMS, LLC v. Severstal U.S. Holdings, LLC, Civil Action No. 5:12-CV-31, 2014 WL 4385857, *3-4 (N.D.W. Va. Sept. 4, 2014) (granting motion for leave to file surreply when a reply provided much more in-depth argument than an initial motion and the court found it would rely on information provided in surreply).

Here, the Plaintiff's supplemental memorandum responds, in part, to new material introduced by the Defendants in their reply brief. Furthermore, the Court has relied upon arguments and information provided in the reply and surreply. Accordingly, the Plaintiff's Motion for Leave to File a Supplemental Memorandum Regarding Defendants' Motion to Compel Arbitration is granted.

2002) (quoting <u>Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.</u>, 489 U.S. 468, 476 (1989)).

A district court applies "the federal substantive law of arbitrability, which governs all arbitration agreements encompassed by the FAA." <u>Id.</u> (citations omitted). However, a district court applies ordinary state law principles governing the formation of contracts, "including principles concerning the 'validity, revocability, or enforceability of contracts generally.'" <u>Muriithi v. Shuttle Exp., Inc.</u>, 712 F.3d 173, 179 (4th Cir. 2013) (citations omitted). Section 2 of the FAA provides that arbitration agreements may be declared unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "This saving clause permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." <u>AT&T Mobility LLC v. Concepcion</u>, 563 U.S. ---, 131 S. Ct. 1740, 1746 (2011) (quoting <u>Doctor's Assoc., Inc. v. Casarotto</u>, 517 U.S. 681, 687 (1996)).

To compel arbitration under the FAA, the Fourth Circuit holds that a moving party must

> demonstrate "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute."

<u>Adkins</u>, 303 F.3d at 500-01 (quoting <u>Whiteside v. Teltech Corp.</u>, 940 F.2d 99, 102 (4th Cir. 1991)). "Under the FAA, courts must stay any suit 'referable to arbitration' under an arbitration agreement, where the court has determined that the agreement so provides, and

one of the parties has sought to stay the action." <u>Noohi v. Toll Bros., Inc.</u>, 708 F.3d 599, 604 (4th Cir.) (citing 9 U.S.C. § 3), <u>cert. denied</u>, 134 S. Ct. 48 (2013).

"A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. "Motions to compel arbitration under an arbitration clause should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." <u>Zandford v. Prudential–Bache Sec., Inc.</u>, 112 F.3d 723, 727 (4th Cir. 1997) (citations and internal quotation marks omitted). "Indeed, the heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration." <u>Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.</u>, 867 F.2d 809, 812 (4th Cir. 1989) (citing <u>United Steelworkers of Am. v. Warrior & Gulf Navigation Co.</u>, 363 U.S. 574, 582 (1960)).

### III.  Discussion

As an initial matter, the Court finds that the parties entered into a valid and enforceable arbitration agreement. <u>See</u> <u>Adkins</u>, 303 F.3d at 500-01. While the parties disagree about which of their agreements should apply in this case, neither party disputes the fact that, absent a finding of waiver, a valid agreement covers at least some of the Plaintiff's claims. There is an active dispute between the parties, as evidenced by the Plaintiff filing her civil action in circuit court. The parties' licensing agreements, including the most recent 2014 agreement, have contained arbitration provisions purportedly

covering the Plaintiff's claims.  The parties do not dispute that their transaction has a relationship to interstate commerce for purposes of the FAA.  And finally, although the Plaintiff now makes her own request for an order compelling the parties to submit to arbitration, each party argues that the other has failed, neglected, or refused to arbitrate the dispute.  In order to address the parties' active disputes, a brief survey of the parties' current arguments is necessary.

### A.    The Defendants' Position

In their motion to compel arbitration, the Defendants argue that the Plaintiff signed multiple licensing agreements, including a licensing agreement that was in effect at the time her civil action was filed, which contained fully enforceable arbitration clauses.  The most recent licensing agreement, signed on December 28, 2013, provides as follows:

> **ANY CONTROVERSY, DISPUTE, OR CLAIM (COLLECTIVELY "CLAIM") ARISING OUT OF THIS LEASE OR OUT OF ENTERTAINER PERFORMING AT THE CLUB, WHETHER CONTRACTUAL, IN TORT, OR BASED UPON COMMON LAW OR STATUTE, SHALL BE EXCLUSIVELY DECIDED BY <u>BINDING ARBITRATION</u> HELD PURSUANT TO THE FEDERAL ARBITRATION ACT (THE "FAA"), AND SHALL BE ADMINISTERED BY A NEUTRAL ARBITRATOR AGREED UPON BY THE PARTIES, WHO SHALL BE PERMITTED TO AWARD, SUBJECT ONLY TO THE RESTRICTIONS CONTAINED IN THIS PARAGRAPH 26, ANY RELIEF AVAILABLE IN A COURT. EITHER PARTY MAY REQUEST AN ARBITRATOR EXPERIENCED IN THE ADULT ENTERTAINMENT INDUSTRY. <u>THE PARTIES WAIVE ANY RIGHT TO LITIGATE SUCH CLAIMS IN A COURT OF LAW, AND WAIVE THE RIGHT TO TRIAL BY JURY</u>. . . . THE ARBITRATOR SHALL HAVE EXCLUSIVE AUTHORITY TO RESOLVE ANY DISPUTES OVER THE VALIDITY AND/OR ENFORCEABILITY OF ANY PART OF THIS LEASE, INCLUDING THIS ARBITRATION SECTION.**

The Defendants argue that, pursuant to this arbitration clause, the Plaintiff's claims must be submitted to arbitration, and any challenges to the arbitration clause must be

submitted to the arbitrator, not decided by this Court. The Defendants move the Court to compel the Plaintiff to arbitrate as to all of her claims, both federal and state, for the entire period of time relevant to the Plaintiff's suit, including the years before the Plaintiff signed her first licensing agreement with the Defendants on September 7, 2011.

Additionally, the Defendants request an award of attorney's fees and costs, pursuant to the following provision, which is taken from the same licensing agreement referenced above:

> **IN THE EVENT THAT ANY PARTY CHALLENGES, OR IS REQUIRED TO INITIATE PROCEEDINGS TO ENFORCE, THE ARBITRATION REQUIREMENTS OF THIS PARAGRAPH 26, THE PREVAILING PARTY TO SUCH CHALLENGES/ENFORCEMENT PROCEEDINGS SHALL BE ENTITLED TO AN AWARD OF ALL COSTS, INCLUDING REASONABLE ATTORNEY FEES, INCURRED IN LITIGATING SUCH ISSUES.**

### B.    The Plaintiff's Position

In her response and surreply to the motion to compel arbitration, and in her motion regarding arbitration and reply to that motion, the Plaintiff asserts multiple arguments and seeks alternative forms of relief. At times, the Plaintiff acknowledges that at least some of her claims should be submitted to arbitration. In fact, in her motion regarding arbitration, while arguing that the Defendants–through their own dilatory conduct–have waived their right to enforce any arbitration clause, the Plaintiff also argues in the alternative that the Court should order the Defendants to immediately engage in arbitration.

In her response to the motion to compel arbitration, the Plaintiff argued that any arbitration must occur under the terms of the parties' September 7, 2011 to December 31, 2012 agreement. She argued that the terms of that agreement made clear that it was to

survive any termination of the agreement, which she contends should be construed as giving the terms of that agreement controlling weight over subsequent licensing agreements.

In her supplemental memorandum to the motion to compel arbitration, the Plaintiff stated that she did not oppose the issuance of an order requiring arbitration of all claims arising after September 7, 2011. The Plaintiff asserted that her claims for each individual year should be arbitrated under the provisions of each individual licensing agreement, as the parties executed new licensing agreements regularly from 2011 to 2014 and the terms of those agreements varied from year to year.

In her next filing, the motion regarding arbitration, she moved the Court to require arbitration of her claims, excepting the WVWPCA claims arising before she signed the September 7, 2011 agreement. In the alternative, she requested that the Court deny the Defendants' motion to compel arbitration, order the Defendants to file an answer to the Plaintiff's complaint and issue a scheduling order. The Plaintiff also argued that the Defendants' request for fees and costs should be denied, and that the Court should instead award fees and costs to her. The Plaintiff's most recent filing, her reply to her motion regarding arbitration, seeks similar relief.

Accordingly, the Plaintiff's current position is that the Court should either deny the Defendants' motion to compel arbitration and order that this case proceed in normal course towards trial; or that the Court should issue an order compelling the Defendants to arbitrate, thereby submitting the Plaintiff's claims to arbitration with temporal limitations and under strict guidance from the Court.

Upon consideration of the parties' arguments and the entire record, the Court finds

that all of the Plaintiff's claims should be submitted to arbitration. The Defendants have not waived or defaulted on their right to compel arbitration. The arbitrator will be tasked with determining whether any of the Plaintiff's other challenges to the validity or enforceability of the arbitration clause should succeed. Finally, the Court finds that the Defendants are entitled to reasonable attorney's fees and costs incurred in litigating the instant motion to compel arbitration, pursuant to the plain language of the parties' 2014 licensing agreement.

### C. The Defendants Have Not Waived Their Right to Compel Arbitration

Intertwined with the Plaintiff's other arguments are her averments that the Defendants improperly delayed and frustrated the Plaintiff's efforts to bring this dispute to arbitration. She contends that the Defendants "deliberately dithered for months while the statute of limitations ran on Ms. Robinson's claims." Therefore, she argues that the Defendants have waived their right to compel arbitration, and that arbitration is either inappropriate or must be ordered to take place on the Plaintiff's terms.

The Supreme Court has stated that in certain circumstances there is a presumption that preliminary procedural issues, including waiver, should be submitted to an arbitrator. See Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002) (stating that "the presumption is that the arbitrator should decide 'allegation[s] of waiver, delay, or a like defense to arbitrability'") (alteration in original) (quoting Moses H. Cone Mem'l Hosp, 460 U.S. at 24-25). However, confronted with the precise issue before this court, several federal courts have found that a determination of "waiver by conduct" is one for the court, not the arbitrator. See Reidy v. Cyberonics, Inc., Civil Action No. 1:06-CV-249, 2007 WL 496679, at *3 (S.D. Ohio Feb. 8, 2007) ("Both the First and Fifth Circuits have explicitly held that despite the Supreme Court's statement in Howsam, the specific type of waiver dispute

at issue in this case–one involving an allegation of waiver due to litigation conduct–should be determined by a judge rather than an arbitrator.") (citing Marie v. Allied Home Mort. Corp., 402 F.3d 1, 11 (1st Cir. 2005); Tristar Fin. Ins. Agency, Inc. v. Equicredit Corp. of Am., 97 F. App'x 462, 464 (5th Cir. 2004) (unpublished per curiam)); see also JPD, Inc. v. Chronimed Holdings, Inc., 539 F.3d 388, 394 (6th Cir. 2008) ("[W]e conclude that Howsam did not disturb the traditional rule that the courts presumptively resolve waiver-through-inconsistent-conduct claims."); Ehleiter v. Grapetree Shores, Inc., 482 F.3d 207, 221 (3d Cir. 2007) ("[W]e hold that waiver of the right to arbitrate based on litigation conduct remains presumptively an issue for the court to decide.").   Courts in the Fourth Circuit have reached a similar conclusion, opting to address claims of waiver before compelling arbitration.  See Karnette v. Wolpoff & Abramson, L.L.P., 444 F. Supp. 2d 640, 644 (E.D. Va. 2006) ("Whether there is such a default or waiver is an issue for the court.") (citing Patten Grading and Paving v. Skanska USA Bldg., 380 F.3d 200, 204 (4th Cir. 2004)).

In the instant case, the Plaintiff's argument that the Defendants have waived their right to compel arbitration is properly before this Court, and the waiver issue should be determined before this matter is submitted to arbitration.   Under these circumstances, sending the Plaintiff's waiver claims to an arbitrator would be "exceptionally inefficient." See Marie, 402 F.3d at 13-14 ("If the arbitrator were to find that the defendant had waived its right to arbitrate, then the case would inevitably end up back before the district court with the plaintiff again pressing his claims.  The case would have bounced back and forth between tribunals without making any progress.").   Accordingly, the Court now turns to whether the Defendants' conduct was sufficient to establish a waiver or default of their right

to arbitrate.

In certain circumstances, a party can be found to be in "default" of its right to seek arbitration under the FAA, and the party thus waives its right to insist on arbitration. Maxum Founds., Inc. v. Salus Corp., 779 F.2d 974, 981 (4th Cir. 1985). "Although this principle of 'default' is akin to waiver, the circumstances giving rise to a statutory default are limited and, in light of the federal policy favoring arbitration, are not to be lightly inferred." Id. While delay and participation in litigatory proceedings, without more, will not establish a waiver of the right to arbitration, "[a] party may waive its right to insist on arbitration if the party 'so substantially utiliz[es] the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay.'" MicroStrategy, Inc. v. Lauricia, 268 F.3d 244, 249 (4th Cir. 2001) (alteration in original) (quoting Maxum, 779 F.2d at 981). But even where the party moving to compel arbitration has invoked the "litigation machinery," the "dispositive question is whether the party objecting to arbitration has suffered *actual prejudice*." Id. (quoting Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc., 817 F.2d 250, 252 (4th Cir. 1987)). While one party's delay in cooperating with arbitration proceedings "is a factor to be considered when determining waiver," a reasonable delay will be insufficient to establish waiver without some evidence of actual prejudice. Id. at 250-51 (finding a plaintiff's delay in seeking arbitration was "relatively short" and did not prejudice the defendant, where the plaintiff filed the first of three civil actions six months before requesting arbitration, and the pre-arbitration litigation involved more than fifty "motions, responses, and other procedural maneuvers").

Upon consideration of the entire record, the Court holds that the evidence of the Defendants' delay in proceeding to arbitration is insufficient to find that they waived their

right to arbitration. It was the Plaintiff who utilized the litigation process by filing her complaint in circuit court. Other than their removing the case to this Court and subsequently moving to compel arbitration, the Defendants have not invoked the "litigation machinery" in an attempt to avoid arbitrating the Plaintiff's claims. As to other evidence of the Defendants' dilatory conduct, a review of the factual history of this case demonstrates that any delay, though frustrating to the Plaintiff, did not rise to the level of default or waiver.

Counsel for the Plaintiff, Garry Geffert, sent the Defendants a demand letter on July 24, 2014, stating that the Plaintiff was "willing to resolve this matter informally." On August 7, 2014, at the request of the Defendants' attorney at the time, Matthew J. Hoffer, Geffert sent a second letter, this time making a specific monetary demand on the Defendants. The August 7 letter again provided that the Plaintiff desired "a prompt, informal resolution of this matter."

On August 19, 2014, Hoffer responded to the two demand letters. In that response, he denied that the Defendants were liable under the FLSA and made a counteroffer to settle the dispute, stating that, if the counteroffer was not acceptable, "we should start selecting an arbitrator." Geffert responded on September 4, 2014, rejecting the Defendants' settlement offer and stating, "If you[r] client wishes to engage in serious settlement negotiations, please submit his proposal within ten days. Otherwise, my client is ready to begin the arbitration process." After receiving no response, Geffert sent another letter on September 22, 2014, stating that if Hoffer did not provide a meaningful settlement offer or contact Geffert to begin selecting an arbitrator by the close of business on September 29, 2014, Geffert would consider it a failure to cooperate and would file suit.

On September 26, 2014, Hoffer sent an email to Geffert, stating:

Sorry for the radio silence. I have been out of state much of the time since your prior correspondence.

Vixens [sic] in the process of selecting local counsel for the arbitration. I will get back to you next week.

You should not interpret any delay as a waiver of the agreement to arbitrate. If you regard Vixen's as refusing to arbitrate, which it is not, I imagine your proper remedy would be to file an action to compel it to arbitration.

I will speak with you soon.

According to the Plaintiff, he did not hear from anyone on the Defendants' behalf until October 22, 2014, when Floyd M. Sayre III, the Defendants' current attorney, called Geffert to suggest an arbitrator. Geffert indicated that, while he did not object to Sayre's suggested arbitrator, he preferred a different arbitrator whose office was closer to Martinsburg, West Virginia. Geffert requested that Sayre agree to a tolling of the applicable statute of limitations for the Plaintiff's claims while the parties continued to discuss arbitration. Sayre told Geffert that he did not have the authority to agree to such a tolling until he spoke with the Defendants, but that he would call Geffert later that day. When Geffert did not hear from Sayre on October 22 or October 23, he filed the instant civil action on the Plaintiff's behalf on October 24, 2014.

On November 3, 2014, after receiving a copy of the summons and complaint that were served on his clients, Sayre sent a letter to Geffert, stating, "As you are aware there is an arbitration clause contained in the performance agreement. Are you in agreement that this matter is ripe for arbitration and should not proceed in circuit court, or do you require us to file a motion to compel arbitration?"

Geffert responded on November 6, 2014, echoing his concerns about the statute of limitations and stating that "[the Plaintiff's] position regarding arbitration is set out in the

complaint." In the circuit court complaint, the Plaintiff alleged that the Defendants "refused to cooperate in the commencement of arbitration proceedings, despite requests of the plaintiff to begin the proceedings" and that the "Defendants' refusal to cooperate with the beginning of the arbitration proceedings constitutes a waiver of the provision in the Entertainment Licensing Agreement purporting to require arbitration."

Under these circumstances, one reasonable reading of the parties' correspondence is that the Defendants intentionally delayed in coordinating with the Plaintiff and in selecting a neutral arbitrator. But such an interpretation would require a series of inferences of bad faith, of which there is no conclusive evidence. It is just as reasonable to take the Defendants at their word that they have been attempting to facilitate arbitration and that any delay was not a product of bad faith.

By all outward appearances, the Defendants are now prepared to proceed towards arbitration. Indeed, the Defendants aver that the parties have agreed to a neutral arbitrator, Jay Arceneaux, and that the Defendants have forwarded Arceneaux the Plaintiff's complaint. While the Plaintiff has introduced email correspondence between the parties and Arceneaux, illustrating that the Defendants have not yet given Arceneaux final confirmation that he should begin arbitrating the dispute, the Defendants counter that they are merely waiting for this Court's Order before arbitration can begin.

The Plaintiff argues that her civil complaint was filed only *after* the Defendants failed to engage in the selection of a neutral arbitrator. In her motion regarding arbitration, she avers that the Defendants have delayed in both this case and in a separate case in which the Defendants have allegedly failed to coordinate arbitration proceedings in a timely manner. She claims that she filed the instant civil action, as opposed to a petition to

compel arbitration under 9 U.S.C. § 4, because she was concerned about tolling the applicable statute of limitations. The record before the Court supports her averment that she requested a tolling agreement from the Defendants, and that the Defendants did not respond to that request. However, that delay apparently amounted to approximately forty-eight hours. While the Plaintiff repeatedly argues that the Defendants forced her to file the instant civil action by dithering for months, the actual time line appears more reasonable. The only potentially unreasonable delay appears to be the period in early October of 2014, when the Defendants failed to promptly contact the Plaintiff to suggest a neutral arbitrator.

Importantly, the Defendants did not mislead the Plaintiff about her rights under the FAA, but instead informed Plaintiff's counsel, more than once, that the best avenue for relief in the face of any perceived delay would be to petition a district court to compel arbitration under 9 U.S.C. § 4. Instead, the Plaintiff filed her complaint. In the months since then, she has not only challenged the enforceability of the parties' current arbitration agreement, but she has also argued in the alternative that this case should proceed towards trial. Meanwhile, the Defendants aver that they are prepared to proceed to arbitration with Arceneaux, and that they await this Court's Order to clarify which claims must be arbitrated. The Court expects, with both parties now ordered to submit to arbitration, that there will be no further delays of any length.

### D.   All of the Plaintiff's Claims Are Submitted to Arbitration

The Plaintiff's most consistent averment is that she is not opposed to arbitration, so long as it is conducted on her terms. Accordingly, the bulk of the parties' dispute centers on the extent to which the Plaintiff must be compelled to arbitrate. The Plaintiff argues that the claims that arose before she signed the first licensing agreement in September of 2011

16

should not be referred to arbitration. The Defendants counter that the language of the parties' arbitration clause is broad enough to encompass all of the Plaintiff's claims, including those claims that arose before the parties entered into their first agreement.

The Court finds that all of the Plaintiff's claims must be submitted to arbitration, including those claims that arose before the September 2011 agreement was executed. Where parties concede that they have agreed to arbitrate at least some matters, any remaining doubts concerning the scope of arbitration should be resolved in favor of arbitration. Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 298 (2010). The Supreme Court has held that courts should only order arbitration when "neither the formation of the parties' arbitration agreement *nor* (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in question." Id. at 299. Here, there are no serious disputes as to the formation of the parties' agreement. Additionally, the parties' arbitration agreement contained a clause expressly providing that the arbitrator shall have exclusive authority to resolve any disputes over the validity or enforceability of any part of the parties' agreement.

Given the well-established presumption in favor of arbitration, courts have generally applied broad language in an arbitration agreement retroactively, "especially when combined with language that refers to all dealings between the parties." Levin v. Alms & Assocs., 634 F.3d 260, 267 (4th Cir. 2011). Accordingly, when an agreement states that it shall apply to "any dispute" or "all disputes," and the agreement is not limited only to disputes arising under the terms of a specific contract, the agreement can encompass disputes that arose *before* the parties entered into the agreement. In Levin, the Fourth Circuit considered an arbitration clause that contained the language "[a]ny dispute shall be

17

submitted to binding arbitration." Id. The Fourth Circuit found that such language "is broad enough to encompass *all* agreements and *any* disputes, past and present, especially given that the presumption in favor of arbitrability is particularly applicable when the arbitration clause is broadly worded." Id.

Here, the arbitration clause found in the parties' most recent agreement provides that it applies to "ANY CONTROVERSY, DISPUTE, OR CLAIM . . . ARISING OUT OF THIS LEASE OR OUT OF ENTERTAINER PERFORMING AT THE CLUB." This language is broad enough to encompass claims dating back to before the agreement took effect. See Drews Distrib., Inc. v. Silicon Gaming, Inc., 245 F.3d 347, 350 (4th Cir. 2001) ("[T]he reach of an arbitration clause is not restricted to those causes of action brought under the contract containing the clause, unless the parties draft a clause so restricted in scope."). Given the terms of the parties' agreement and the nature of their dispute, all of the Plaintiff's claims are arbitrable. "In essence, the Court should find that a party's claims fall within the scope of the arbitration clause, unless the Court finds the arbitration clause cannot possibly be interpreted to cover the claims at issue." Montgomery v. Applied Bank, 848 F. Supp. 2d 609, 618 (S.D.W. Va. 2012). Accordingly, all of the Plaintiff's claims–including those claims that arose before September of 2011–are hereby submitted to arbitration.

### E.     The Arbitrator Must Determine Which Licensing Agreement(s) Control

The United States Supreme Court has recognized that "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 68-69, (2010). Provisions in an agreement to arbitrate that include

18

these "gateway" questions are known as "delegation provisions." Id. In Rent-A-Center, the Supreme Court stated that federal courts, not arbitrators, should consider challenges to the validity of a precise arbitration agreement, such as claims of "fraud in the inducement of the arbitration clause itself." Id. at 71 (quoting Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04 (1967)). Furthermore, a delegation of authority to resolve disputes about the enforceability of an agreement can be challenged when a party attacks the delegation clause specifically, instead of the agreement as a whole. Id. Absent those circumstances, "[a]n agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." Id. at 70.

The disputed provision that the Supreme Court considered in Rent-A-Center stated that "[t]he arbitrator and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable." Id. at 66. The Court enforced the parties' delegation provision. Id. at 72. In the instant case, the arbitration clause provides, "THE ARBITRATOR SHALL HAVE EXCLUSIVE AUTHORITY TO RESOLVE ANY DISPUTES OVER THE VALIDITY AND/OR ENFORCEABILITY OF ANY PART OF THIS LEASE, INCLUDING THIS ARBITRATION SECTION."

The agreement in this case, much like the agreement in Rent-A-Center, contains a delegation provision giving an arbitrator the authority to resolve disputes relating to the *enforceability* of the arbitration clause. Therefore "disputes over the validity and/or

19

enforceability" of the parties' agreement must be submitted to arbitration unless the Plaintiff challenges the delegation provision specifically. The Plaintiff has not alleged that the delegation provision is unconscionable or otherwise unenforceable. Rather, she takes issue with the retroactive applicability of the 2014 agreement as against the other annual agreements that she signed. Accordingly, the parties' dispute over which annual agreement controls is one to be decided by the arbitrator.

**F.     The Defendants' Request for Reasonable Fees and Costs is Granted**

The Plaintiff maintains that, due to the Defendants' dilatory conduct, the Defendants should not be able to obtain an award of reasonable fees and costs if they succeed on their motion to compel arbitration. Based upon the facts as outlined above, and looking to the plain language of the parties' agreement, the Court finds that an award of reasonable fees and costs to the Defendants is appropriate. The pertinent provision of the parties' agreement reads as follows:

> **IN THE EVENT THAT ANY PARTY CHALLENGES, OR IS REQUIRED TO INITIATE PROCEEDINGS TO ENFORCE, THE ARBITRATION REQUIREMENTS OF THIS PARAGRAPH 26, THE PREVAILING PARTY TO SUCH CHALLENGES/ENFORCEMENT PROCEEDINGS SHALL BE ENTITLED TO AN AWARD OF ALL COSTS, INCLUDING REASONABLE ATTORNEY FEES, INCURRED IN LITIGATING SUCH ISSUES**.

The Defendants were required to initiate proceedings to enforce the parties' agreement to arbitrate all disputes. While the Plaintiff maintains that it was she who was forced to initiate these proceedings by way of the Defendants' intentional delay tactics, that argument does not supplant the plain language of the parties' agreement. The Defendants, on multiple occasions, stressed to the Plaintiff that if she believed the Defendants were

intentionally frustrating the arbitration process she should file a petition to compel arbitration. Instead, the Plaintiff filed a complaint and initiated the instant civil proceedings. Since that time, the Plaintiff has contested the Defendants' motion to compel, arguing that it cannot apply to all of her claims and should only apply on her terms, or, in the alternative, that her case should not be arbitrated at all. In addition to contesting the Defendants' motion to compel, the Plaintiff has filed her own motion regarding arbitration. While the Plaintiff argues that she should be considered the "prevailing party" under these circumstances, and thus should be entitled to have her fees and costs paid, such an outcome would run contrary to the policy favoring arbitration. Under these circumstances, the Defendants are entitled to an award of reasonable attorney's fees and costs incurred in litigating their motion to compel arbitration.

While the Court grants the Defendants' request for reasonable attorney's fees and costs in litigating the instant motion to compel, the parties' future submissions and any potential objections on the fees and costs issue should not delay the timely arbitration of the parties' dispute.

## IV. Conclusion

For the reasons stated above, the Court finds that the Defendants' Motion to Compel Arbitration and to Dismiss or to Stay Proceedings, and for Attorney Fees and Costs, [ECF 3], should be, and hereby is, **GRANTED**. The Plaintiff's Motion for Leave to File a Supplemental Memorandum, [ECF 11], is **GRANTED**. The Plaintiff's Motion Regarding Arbitration, [ECF 13], is **DENIED**. The Court **ORDERS** that the Plaintiff's claims be **SUBMITTED TO ARBITRATION**, pursuant to this Court's Order and the parties' agreement

to arbitrate.  The Court further **ORDERS** that this civil action is hereby **STAYED** pending completion of the arbitration proceeding.  The parties are **DIRECTED** to notify this Court forthwith upon the conclusion of the matter.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED:** June 23, 2015

GINA M. GROH
CHIEF UNITED STATES DISTRICT JUDGE